## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ALKA A. PITTMAN**                                              **CIVIL ACTION**

**VERSUS**                                                          **No. 24-2168**

**GERALD CAMPBELL, ET AL**                                    **SECTION I**

## ORDER AND REASONS

*Pro se* plaintiff Alka A. Pittman ("Pittman"), proceeding in forma pauperis ("IFP"), filed this action[1] against the father of her children and various Louisiana and Mississippi governmental entities. Now before the Court are three motions to dismiss filed by all defendants.[2] For the reasons set forth below, the Court dismisses plaintiff's complaint in part for lack of subject-matter jurisdiction, in part as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), and in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. BACKGROUND

This lawsuit is plaintiff's third before this Court regarding child-custody proceedings in the 22nd Judicial District of Louisiana, in which the court, among other things, granted sole custody of Pittman's children to their father, Gerald Campbell, Jr. ("Campbell").[3] In her first lawsuit, Pittman alleged violations of her federal constitutional rights.[4] The Court dismissed the case with prejudice because it

---

[1] R. Doc. No. 1.
[2] R. Doc. Nos. 12, 16, 18.
[3] E.D. La. Case No. 21-1786, R. Doc. No. 44, at 1–2; E.D. La. Case No. 22-2242, R. Doc. No. 13.
[4] E.D. La. Case No. 21-1786, R. Doc. No. 44, at 2.

concluded that it lacked subject-matter jurisdiction over the lawsuit.[5] The complaint filed in connection with her second lawsuit alleged that Pittman is of Indigenous American descent and that the child-custody judgment awarding Campbell sole custody of their children constituted genocide because it interfered with Pittman's family continuity.[6] The Court likewise dismissed Pittman's second lawsuit for lack of subject-matter jurisdiction.[7]

Pittman's complaint in this lawsuit explains that she, "an Indigenous living woman, seeks immediate judicial intervention and relief to rectify the wrongful removal and retention of her daughter and son due to jurisdictional errors and violations of Constitutional and International Rights."[8] The complaint names as defendants Campbell, the State of Louisiana and several governmental entities thereof (the Louisiana Attorney General, the 22nd Judicial District Court of St. Tammany and Washington Parishes, as well as the St. Tammany Parish Clerk of Court) ("Louisiana defendants"),[9] and the State of Mississippi and several entities thereof (the Mississippi Attorney General, Jasper County Justice Court, and the Jasper County Chancery Court Clerk) ("Mississippi defendants") (collectively, "defendants").[10]

---

[5] *Id.* at 5.
[6] E.D. La. Case No. 22-2242, R. Doc. No. 13, at 2.
[7] *Id.* at 5.
[8] R. Doc. No. 1, at 1.
[9] The St. Tammany Parish Clerk of Court has not yet appeared, although an executed summons with respect to the Clerk was filed into the record. *See* R. Doc. No. 19.
[10] The State of Mississippi and the Mississippi Attorney General have not yet appeared, although executed summonses with respect to those two defendants were filed into the record. R. Doc. No. 9.

The crux of the present complaint is noncompliance with the jurisdictional provision of the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1911. That statute provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." § 1911(a). In Pittman's view, § 1911 gives a tribal court, rather than Louisiana state courts, jurisdiction over the child-custody dispute. Accordingly, she "urge[s] [the Court] to recognize the jurisdictional precedence of [§ 1911]," which "underscor[es] the need of transferring the proceedings to the appropriate jurisdiction of her tribe."[11]

Pittman's statement of the facts underlying her claims is terse and consists of two short paragraphs or four sentences in total.[12] In the first, she states that she seeks immediate judicial intervention to rectify the wrongful removal and retention of her minor children, which "is necessitated by jurisdictional errors and violations of Constitutional and International rights."[13] In the second, she explains that the stress, anxiety, and abuse that her children have experienced as a result of the custody dispute "necessitate immediate intervention and the application of the Indian Child Welfare Act to ensure [her children's] mental health, physical well-being and the preservation of their cultural and familial ties."[14]

---

[11] *Id.* at 2.
[12] *See id.* at 3–4.
[13] *Id.* at 4.
[14] *Id.*

The complaint asserts three "counts" in the section entitled "causes of action."[15] First, she alleges that defendants have violated 42 U.S.C. § 1983.[16] Pittman does not explain how defendants did so and provides merely a generalized statement restating the cause of action.[17] Second, Pittman alleges that defendants violated 18 U.S.C. §§ 241 and 242, which make it a crime to deprive persons of rights secured by federal law and to conspire to deprive such rights.[18] Pittman alleges that the wrongful removal of her children violated these statutes.[19] She also alleges that the misidentification of her and her children's ethnicity violates their rights under the United Nations Declaration on the Rights of Indigenous Peoples.[20] Third, Pittman lists as a count 25 U.S.C. § 1911 together with 8 U.S.C. § 1401(b),[21] the latter of which provides that a person born to a tribe in the United States is a United States citizen.[22] She avers that "[t]he relief sought is grounded in the recognition of the [Pittman's] and her offspring[']s citizenship status under these statutes," which "support[] her claims and underscores the necessity of the Court's intervention to protect the rights and welfare of Indigenous children."[23]

---

[15] *Id.* at 4–5.

[16] *Id.*

[17] *See id.*

[18] *Id.* at 4–5.

[19] *Id.*

[20] *Id.*

[21] R. Doc. No. 1, at 5.

[22] "The following shall be nationals and citizens of the United States at birth: . . . (b) a person born in the United States to a member of an Indian, Eskimo, Aleutian, or other aboriginal tribe: *Provided*, That the granting of citizenship under this subsection shall not in any manner impair or otherwise affect the right of such person to tribal or other property." 8 U.S.C. § 1401(b).

[23] *Id.*

Pittman's prayer for relief is voluminous, as it lists no less than 14 requests for relief.[24] Significantly, the very first request for relief is for this Court to "[o]rder the immediate return of [Pittman's] minor offspring[] to her permanent custody in her home state."[25]  She also explicitly asks this Court to vacate the judgement awarding Campbell custody.[26]  Pittman concludes by moving this Court to consider the citizenship of her children pursuant to 8 U.S.C. § 1401(b), to apply § 1911, and to grant the relief to protect the mental health and "cultural rights" of her children.[27] She further explains that "[i]mmediate action is imperative to rectify the jurisdictional errors" and to "uphold their rights as Indigenous nationals."[28]

Defendants have filed three motions to dismiss.[29] Some of the Louisiana defendants filed a motion[30] pursuant to Federal Rule of Civil Procedure 12(b)(1) advancing several grounds for dismissal, including that this Court lacks subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine,[31] that ICWA does not

---

[24] *See id.* at 5–7.

[25] *Id.* at 5.

[26] *Id.*

[27] *Id.* at 7.

[28] *Id.*

[29] R. Doc. Nos. 12, 16, 18.

[30] R. Doc. No. 12. This motion was filed by all Louisiana defendants except the St. Tammany Parish Clerk. The Clerk was served after the other Louisiana defendants filed their motion. *See* R. Doc. No. 19. Although the Clerk has not yet appeared, the Court nonetheless treats all the Louisiana defendants collectively for the purposes of ruling on the motion. Since, as will be explained below, IFP complaints may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) on the Court's own motion even before service of process, *see Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009), the Court has authority to dismiss claims against the Clerk although the Clerk has not appeared or filed a motion to dismiss.

[31] *Id.* at 6–7.

confer jurisdiction because it does not apply,[32] and that the Louisiana defendants enjoy various forms of immunity.[33] Campbell filed a motion in which he asserted that Pittman has manipulated the court system, such as by committing perjury, and he suggested that Pittman fabricated her indigenous identity in the wake of her losing custody.[34] Finally, the Mississippi defendants filed a motion[35] to dismiss asserting essentially the same grounds as the Louisiana defendants.[36]

Pittman filed responses[37] to all three motions, in which she seems to have pivoted away from ICWA as the principal basis for relief. Whereas the complaint emphasized the "jurisdictional precedence"[38] of ICWA and repeatedly invoked § 1911, Pittman's responses do not mention ICWA nor address its disputed applicability. Rather, Pittman cites or invokes an array of state statutes, unspecified treaties,

---

[32] *Id.* at 7–8.

[33] *Id.* at 8–11.

[34] R. Doc. No. 16.

[35] R. Doc. No. 18. This motion was filed by the Jasper County Justice Court and the Jasper County Chancery Court Clerk. Although the State of Mississippi and the Mississippi Attorney General have not yet appeared, the Court nonetheless treats all the Mississippi defendants collectively for the purposes of ruling on the motion. Since, as will be explained below, IFP complaints may be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) on the Court's own motion even before service of process, *see Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009), the Court has authority to dismiss claims against Mississippi and the Attorney General although they have not appeared or filed a motion to dismiss.

[36] In her sur-reply, Pittman claims that the Mississippi defendants filed their motion "long after" the deadline and accuses this Court of applying stricter standards against her and leniency toward government entities. *See* R. Doc. No. 29, at 1–2. Pittman's claims are baseless and mistaken. The Mississippi defendants that have filed this motion were served on November 14, 2024. *See* R. Doc. No. 13. Accordingly, the deadline for filing their motion was December 16, 2024, on which date they filed their motion. *See* R. Doc. No. 18. The motion was therefore timely.

[37] R. Doc. Nos. 20–22.

[38] R. Doc. No. 1, at 2.

ethical canons, and codes of conduct.[39] Further, she alleges for the first time that the Louisiana and Mississippi defendants violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[40] Pittman did not cite either clause in her complaint. In addition, she provides factual information that is absent from her complaint.

When the Court first considered the motions, the Court discovered that it was unclear to which Indian tribe Pittman or her children belonged.[41] Since Pittman's indigenous heritage is central to this matter, the Court ordered Pittman to file confirmation of tribal membership.[42] Pittman complied with the order and filed into the record confirmation that Pittman herself and her children are members of the Tchou Tchouma Tchoupitoulas Nation.[43] In addition, Pittman filed a sur-reply[44] in response to the reply[45] filed by the Mississippi defendants.

## II. STANDARDS OF LAW

### a. Lack of Subject-Matter Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to

---

[39] R. Doc. No. 21-1, at 2–10; R. Doc. No. 22-1, at 1–9.
[40] R. Doc. No. 21-1, at 2; R. Doc. No. 22-1, at 2.
[41] R. Doc. No. 23.
[42] *Id.*
[43] R. Doc. No. 25.
[44] R. Doc. No. 29.
[45] R. Doc. No. 24.

Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (citation omitted). Courts must consider a Rule 12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss an action for lack of subject-matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. When a court determines that it does not have subject-matter jurisdiction over an action, the action is dismissed without prejudice. *See, e.g.*, *id.*; *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### b. Grounds for Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)

"The federal in forma pauperis statute, enacted in 1892 and presently codified as 28 U.S.C. § 1915, is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). However, this statute authorizes courts to dismiss cases on their own motion for several

grounds. *See* § 19115(e)(2)(B)(i)–(iii).[46] "Dismissals on these grounds are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke*, 490 U.S. at 324; *see also Brewster v. Dretke*, 587 F.3d 764, 767 (5th Cir. 2009) ("The district court may dismiss an in forma pauperis proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met." (quoting *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990))).

Relevant to this case are the first and second grounds for dismissal. The first ground upon which § 1915(e)(2)(B) authorizes federal courts to dismiss an IFP proceeding is where the court determines that the action is "frivolous or malicious." § 1915(e)(2)(B)(i). An IFP complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "[A] complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Thompson v. Tx. Dep't of Crim. Just.*, 67 F.4th 275, 279 (5th Cir. 2023) (internal quotation and citation omitted). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

---

[46] "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that: . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Second, § 1915(e)(2)(B)(ii) "requires courts to dismiss an *in forma pauperis* proceeding at any time if the action fails to state a claim upon which relief may be granted." *Miller v. Dunn*, No. 24-10668, 2025 WL 32818, at *1 (5th Cir. Jan. 6, 2025). Dismissals for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) are governed by the same standards applicable to dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013). "Under that standard, a complaint fails to state a claim upon which relief may be granted when it does not contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Thus, a plaintiff must plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (internal quotation and citation omitted). "Allegations of pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Rogers*, 709 F.3d at 407. A court may *sua sponte* dismiss a complaint for failure to state a claim without notice if the dismissal is without prejudice. *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016).

## III. ANALYSIS

The Court concludes that the Pittman's complaint must be dismissed. The grounds for dismissal turn on the circumstances of certain defendants. The Court will analyze Pittman's claims accordingly.

### a. The States of Louisiana and Mississippi

With respect to the States of Louisiana and Mississippi, the Court finds that Pittman's claims against them must be dismissed because the Court lacks subject-matter jurisdiction over them on account of their sovereign immunity. "Sovereign immunity bears on this court's subject matter jurisdiction." *Matter of Entrust Energy, Inc.*, 101 F.4th 369, 382 (5th Cir. 2024). It "bars private suits against nonconsenting states in federal court." *Book People, Inc. v. Wong*, 91 F.4th 318, 334–35 (5th Cir. 2024). Since Louisiana and Mississippi have not consented to this lawsuit, it is plainly precluded by their sovereign immunity. Nor does the so-called *Ex Parte Young* exception apply. That exception applies only when a plaintiff "name[s] *individual state officials* as defendants in their official capacities." *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (emphasis added). In turn, it does not operate to exempt claims directly against the states themselves.

### b. The 22nd Judicial District Court and The Jasper County Justice Court

The Court concludes that Pittman's claims against the 22nd Judicial District Court and the Jasper County Justice Court (collectively, "the state courts") must be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) because these entities lack the capacity to be sued. Federal Rule of Civil Procedure 17(b)(3) governs the capacity of the state courts to be sued. *Cf. McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 416 (5th Cir. 2023) (applying Rule 17(b)(3) to determine the capacity of a state court to be sued). It provides that the capacity to be sued is determined "by the law

of the state where the [federal district] court is located." Fed. R. Civ. Pro. 17(b)(3). Accordingly, Louisiana law applies.

In *Roberts v. Sewerage & Water Board of New Orleans*, 634 So. 2d 341 (La. 1994), the Louisiana Supreme Court set forth the test for determining the status of a governmental entity to be sued. It stated that:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

*Id.* at 346.

In *McLin v. Twenty-First Judicial District*, the Fifth Circuit applied the *Roberts* test to conclude the Louisiana judicial district courts are not seperate entities and therefore lack the capacity to be sued. 79 F.4th 411, 416–17 (5th Cir. 2023) (holding that the 21st Judicial District Court lacked the capacity to be sued pursuant to Louisiana law). The analysis emphasized that the judicial district courts are part of a unified state court system created by the Louisiana Constitution. *Id.* at 416.

In light of *McLin*, the state courts lack the capacity to be sued. The holding of *McLin* squarely precludes Pittman's lawsuit against the 22nd Judicial District Court. And its reasoning clearly extends to the Jasper County Justice Court. Like Louisiana judicial district courts, Mississippi justice courts are created by the Mississippi Constitution as part of a unified court system. *See* Miss. Const. § 171. Accordingly,

the Jasper County Justice Court is not a separate legal entity with the capacity to be sued pursuant to Louisiana law.

### c. Remaining Defendants

The Court having dismissed Louisiana, Mississippi, the 22nd Judicial District Court, and the Jasper County Justice Court from this lawsuit, five defendants remain: Campbell, the Louisiana Attorney General, the Mississippi Attorney General, the St. Tammany Parish Clerk of Court, and the Jasper County Chancery Court Clerk. Since whether Pittman's § 1983 claims should be dismissed turns on facts or circumstances particular to each of the remaining defendants, the Court will now analyze Pittman's § 1983 claims with respect to each defendant.[47] However, the Court will analyze Pittman's claims pursuant to 18 U.S.C. §§ 241 and 242 as well as to 25 U.S.C. § 1911 as to all defendants.

#### i. Pittman's §1983 claims against Campbell must be dismissed.

Since the Court concludes that Pittman has failed to state valid § 1983 claims against Campbell, these claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). "[S]tate action is a prerequisite for bringing an action under Section 1983." *Rundus v. City of Dallas*, 634 F.3d 309, 312 (5th Cir. 2011). This prerequisite is met "only when the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Hernandez v. Causey*, 124 F.4th 325,

---

[47] The Court decides not to reach whether sovereign immunity or qualified immunity applies to the remaining defendants (apart from Campbell) with respect to Pittman's § 1983 claims because the Court does not have sufficient facts to determine those fact-intensive questions and can dispose of these claims on other grounds.

335 (5th Cir. 2024) (internal quotation and citation omitted). Stated differently, "mere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (cleaned up) (internal quotation and citation omitted). However, "private action may be deemed state action when the defendant's conduct is fairly attributable to the State." *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (cleaned up) (internal quotations and citation omitted). Fair attribution may be found where private actors are "willful participants in joint action with the State or its agents." *Hernandez*, 124 F.4th at 335 (cleaned up) (internal quotation and citation omitted). For example, private parties bribing a state judge so that he would issue an illegal injunction were held to have engaged in state action for the purposes of § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

Although Pittman's complaint provides little information with respect to Campbell, her response to his motion to dismiss does elaborate. She accuses Campbell of abuse, manipulating the court system, making false claims, and neglect.[48] Nowhere, either in her complaint or her response, does Pittman even suggest that Campbell engaged in joint action with state officials such that § 1983 applies to him. Even with the information outside of the complaint, Pittman has not stated sufficient factual allegations to show that the state-action requirement is satisfied with respect to Campbell. She has therefore failed to state valid claims against Campbell pursuant to § 1983.

---

[48] R. Doc. No. 20-1, at 1–2, 7–8.

*ii. Pittman's § 1983 claims against the Louisiana Attorney General and the St.*
*Tammany Parish Clerk must be dismissed.*

To the extent that Pittman's claims pursuant to § 1983 arise from the child-custody order of the 22nd Judicial District Court, the Court concludes that it lacks subject-matter jurisdiction over those claims. In Pittman's first case, she brought claims pursuant to § 1983 for due process violations during the custody proceedings involving her children.[49] She prayed for this Court to order that she "have [her] children back in [her] custody immediately."[50] This Court concluded that it lacked subject-matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.[51]

*Rooker-Feldman* likewise precludes this Court's exercise of jurisdiction of Pittman's similar § 1983 claims in this matter. The *Rooker-Feldman* doctrine holds that "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994). "The casting of a complaint in the form of a civil rights action cannot circumvent this rule[.]" *Id.* "When a § 1983 suit is 'inextricably intertwined' with a state-court judgment such that the suit is, essentially, an attack on that judgment, district courts lack original jurisdiction over the suit." *Batista v. Carter*, 796 F. App'x 209, 210 (5th Cir. 2020) (citing *Liedtke*, 18 F.3d at 317–18). *Rooker-Feldman* applies even if the plaintiff does not explicitly seek to overturn the state-court judgment where the

---

[49] E.D. La. Case No. 21-1786, R. Doc. No. 1, at 6.
[50] *Id.* at 10.
[51] E.D. La. Case No. 21-1786, R. Doc. No. 44.

lawsuit "in essence challenges the soundness of that judgment" and impermissibly seeks to circumvent it. *See id.* at 209.

In this case, Pittman again seeks to bypass and to undo the state-court judgment awarding custody of her children to Campbell. Pittman requests that this Court issue an emergency injunction ordering the immediate return of her children to her custody.[52] In addition, she explicitly requests that this Court "vacate" the original judgment granting Campbell custody.[53] These claims for relief are squarely precluded by *Rooker-Feldman*.

Further, Pittman's other claims for relief,[54] including claims for monetary damages, are also barred by *Rooker-Feldman*. These claims would require that the custody proceedings be "re-opened and re-litigated in federal court and, ultimately, seek[] to nullify the state-court judgment averse to her." *See Turner v. Chase*, 334 F. App'x 657, 660 (5th Cir. 2009). Consequently, these claims are "inextricably intertwined" with the state-court judgment such that they are essentially an attack on that judgment. *See Batista*, 796 F. App'x at 210. Had a constitutional violation occurred in the course of the child custody proceedings, it was to be resolved by Louisiana state courts. *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir. 1994) ("Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court.").

---

[52] R. Doc. No. 1, at 5.
[53] *Id.*
[54] *Id.* at 5–6.

In her response, Pittman, for the first time, asserts gross negligence and systemic failures on the part of Louisiana officials and agencies in failing to investigate reports of abuse.[55] She claims that these failures violated Louisiana state law and have resulted in numerous federal constitutional violations, such as the Fifth Amendment; the Eighth Amendment; and, it appears to the Court, the Equal Protection Clause of the Fourteenth Amendment.[56] Regardless of whether these claims are cognizable or valid in light of the facts in the response, these claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Since none of these facts are in the complaint, Pittman necessarily failed to state a claim based on them. *See Legate*, 822 F.3d at 210.

*iii. Pittman's § 1983 claims against the Mississippi Attorney General and the Jasper County Chancery Court Clerk must be dismissed.*

As she does in her response to the Louisiana defendants' motion to dismiss, Pittman provides new factual information in her response and sur-reply with respect to the Mississippi defendants' motion. She alleges that the Mississippi defendants failed to investigate reports of abuse in violation of Mississippi state law.[57] She again claims that defendant's failure to investigate violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[58] These claims and the underlying facts are not pleaded in Pittman's complaint. Nor does the complaint provide any other facts in support of these claims. The Court must therefore dismiss Pittman's

---

[55] R. Doc. No. 21-1, at 3–4.
[56] *Id.* at 3–4.
[57] R. Doc. No. 22-1, at 3–4.
[58] *Id.* at 4–5.

claims against the Mississippi Attorney General and the Jasper County Chancery Court Clerk for failure to state a claim.

*iv. Pittman's claims pursuant to 18 U.S.C. §§ 241 and 242 must be dismissed as frivolous.*

With respect to Pittman's claims pursuant to 18 U.S.C. §§ 241 and 242, the Court will dismiss them as frivolous. Sections 241 and 242 are criminal statutes that do not give rise to civil liability or a private right of action. *See Farwell v. Rushing*, No. 22-20157, 2024 WL 4708917, at *1 (5th Cir. Nov. 7, 2024) (per curiam) (unpublished) ("Moreover, to the extent that they assert that Rushing conspired against them in violation of 18 U.S.C. §§ 241 and 242, these are criminal statutes that do not provide for a private right of action."); *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) ("We affirm the dismissal of Allen's claims under 18 U.S.C. §§ 241 and 242 because these are criminal statutes that do not give rise to civil liability."). Accordingly, there is no arguable legal basis for Pittman to recover pursuant to these statutes.

*v. Pittman's claims pursuant to ICWA must be dismissed as frivolous.*

Finally, Pittman's claim pursuant to ICWA is frivolous. As explained above, Pittman's complaint centers on the jurisdictional provision of ICWA, 25 U.S.C. § 1911, which provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe." The Louisiana and Mississippi defendants discuss this provision as part of their argument that this Court's lacks

subject-matter jurisdiction in this case.[59] However, the Court discerns a fundamental problem with Pittman's invocation of § 1911 with respect to the merits of her claim.

Any reliance by Pittman on § 1911 is "indisputably meritless," *see Thompson*, 67 F.4th at 279, and therefore frivolous because § 1911 plainly does not apply. Pursuant to § 1911, Indian tribes alone have exclusive jurisdiction over custody proceedings involving Indian children. For the purposes of § 1911, an "Indian tribe" refers only to "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians." 25 U.S.C. § 1903(8). The Tchou Tchouma Tchoupitoulas Nation has not been recognized as eligible for services at all times material to this lawsuit, and it is therefore is not an Indian tribe for the purposes of § 1911.[60] Consequently, § 1911 does not provide Pittman with an arguable legal basis for relief.

## IV. CONCLUSION

For the foregoing reasons,

---

[59] R. Doc. No. 12, at 7–8; R. Doc. No. 18, at 13–14.

[60] *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024); Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 88 Fed. Reg. 54654-01 (Aug. 11, 2023); Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 88 Fed. Reg. 2112-01 (Jan. 12, 2023); Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 87 Fed. Reg. 4636-02 (Jan. 28, 2022); Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed. Reg. 7554-01 (Jan. 29, 2021); Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 85 Fed. Reg. 5462-30 (January 30, 2020).

**IT IS ORDERED** that Pittman's claims against the State of Louisiana and the State of Mississippi are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Pittman's claims against the 22nd Judicial District Court and the Jasper County Justice Court are **DISMISSED WITH PREJUDICE** as frivolous in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

**IT IS FURTHER ORDERED** that Pittman's claims pursuant to 18 U.S.C. §§ 241 and 242 are **DISMISSED WITH PREJUDICE** in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

**IT IS FURTHER ORDERED** that Pittman's claims pursuant to 25 U.S.C. § 1911 are **DISMISSED WITH PREJUDICE** in accordance with 28 U.S.C. § 1915(e)(2)(B)(i).

**IT IS FURTHER ORDERED** that Pittman's § 1983 claims against Campbell, the Louisiana Attorney General, the Mississippi Attorney General, the St. Tammany Parish Clerk of Court, and the Jasper County Chancery Court Clerk are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, January 31, 2025.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

20